UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EMANUEL FORD, | ] |
| Plaintiff, | ] |
| v. | ] |
| | ] CV-03-BE-1956-S |
| CITY OF BIRMINGHAM, | ] |
| Defendant. | ] |

## MEMORANDUM OPINION

Before the court is Defendant City of Birmingham's Motion for Summary Judgment (Doc. 14). For the reasons stated herein, the court grants the motion in part. Accordingly, the court dismisses Ford's claims for punitive damages and Ford's claim of excessive force.

**I. Facts and Procedural Background**

Viewed in the light most favorable to Ford, the underlying facts are as follows: Emmanuel Ford, a Birmingham Housing Authority employee, went into an apartment to inspect it. *Doc.* 15, Ex. 1, p. 22. Within minutes, police raided the unit. *Doc.* 15, Ex. 1, p. 49. During the drug raid, a policeman thought to be Officer Speigle shoved Ford into a refrigerator, into a wall, into a table, and onto the floor. *Doc.* 15, Ex. 1, p. 54-57. Then the policeman handcuffed Ford and left him there for 15 to 20 minutes, after which police verified Ford was a Housing Authority employee and released him. *Doc.* 15, Ex. 1, p. 59. Ford claims that he underwent

medical treatment and missed work because his legs and one arm were injured[1] in the incident. *Doc.* 15, Ex. 1, p. 73-79. The police detained Ford in accordance with the City's policy that police should detain everyone present in a raid. *Doc.* 16, p. 10.

Ford has sued the City under 42 U.S.C. § 1983 for false arrest and excessive use of force. The City has moved for summary judgment on the following grounds: first, the City argues that, because no evidence of an unconstitutional municipal "policy or procedure" exists, the City cannot be held liable for either claim under 42 U.S.C. § 1983; second, the City argues that Ford was not actually arrested or detained; third, the City argues that no excessive force was used; and fourth, the City argues that punitive damages are not recoverable in this action.

## II. Standard of review

When a district court reviews a motion for summary judgment under Federal Rules of Civil Procedure 56, it must determine two things: (1) whether any genuine issues of material fact exist; and, if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). To succeed, the moving party bears the burden of establishing both prongs of the summary judgment test. The nonmoving party may defeat the motion for summary judgment by establishing either genuine issues of material fact or that the movant is not entitled to judgment as a matter of law.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

---

[1] Based on the record on summary judgment, the exact nature and extent of Ford's injuries are unclear.

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) (quoting Fed. R. Civ. P. 56).  The party seeking summary judgment can meet this burden by offering evidence showing no dispute of material fact, or by showing that the nonmoving party's evidence fails to meet some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-23.  Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  477 U.S. at 323.

When the moving party has met his burden, Rule 56 (e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P 56 (e)).  The responding party does not need to present evidence in a form admissible at trial; "however, he may not merely rest on his pleadings."  477 U.S. at 324.  "The plain language of Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

In responding to a properly-supported motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 , 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (citations omitted); *accord Spence v.*

*Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

After both parties have addressed the motion for summary judgment, the court must grant the motion if no genuine issues of material fact exist and if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which the jury could reasonably find for the nonmovant. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1998). The court should not weigh the evidence, nor make determinations as to the credibility of witnesses because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Thus, "the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Graham*, 193 F.3d at 1282 (quoting *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988)).

**III. Discussion**

**A. Ford's Claims for Punitive Damages**

The City correctly points out that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). *Doc*. 16, p. 9. Ford did not respond to the City's argument on this point. Because, as a matter of law, the City cannot be liable for punitive damages under Section 1983, the court grants the City summary judgment on the issue of punitive damages and dismisses Ford's requests for punitive

damages.

**B. Ford's Claim Against the City for Excessive Use of Force**

Ford claims that the City is liable to him because of the officer's use of excessive force when he was detained.  Before a municipality can be liable under Section 1983, the plaintiff must show that the municipality had a custom or policy that caused the constitutional violation *and* that the custom or policy constituted deliberate indifference to the violation of plaintiff's constitutional rights.  *McDowell v. Brown*, No. 04-10272, 2004 WL 2809309, at *4 (11th Cir. Dec. 8, 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *Gold*, 151 F.3d at 1350.

In its motion, City showed that Ford has no evidence to establish a municipal policy or custom that caused the alleged constitutional violation.  In response, Ford points to two "unconstitutional practices:" first, deliberate indifference in hiring Officer Speigle, the officer who probably detained Ford; and, second, covering up the alleged incident.  Covering up the incident cannot as a matter of law be an "official policy" that *caused* use of excessive force because a coverup would have happened after the alleged incident.

Ford argues that "[t]he City of Birmingham exhibited deliberate indifference in hiring Speigle as they [sic] were aware and placed Speigle in a position to where his psychological profile would result in excessive use of force."  *Plaintiff's Reply*, Doc. 23, p. 16.  According to Ford, the City should have known when it hired Speigle that he would likely use excessive force in making arrests because Speigle was a poor student in high school, Speigle was involved in three shouting matches and nine shoving matches at his previous place of employment, and Speigle's psychological profile reflects that he assumes others commit dishonest acts frequently

and believes others should be disciplined for even minor dishonest acts.

Ford has not demonstrated that any alleged deliberate indifference to his constitutional rights related to the hiring of Speigle was the result of "municipal policy." "[T]o demonstrate a policy or custom, it is generally necessary to show a persistent and widespread practice." *McDowell*, 2004 WL 2809309, at *4. Under appropriate circumstances, however, an action taken only once may be a "policy" that supports municipal liability under Section 1983. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). "Appropriate circumstances" exist "only when the action may be fairly said to represent official policy." *Scala v. City of Winter Park*, 116 F.3d 1396 (11th Cir. 1997). Ford has not shown that the City hired Officer Speigle pursuant to a City hiring policy that was deliberately indifferent to constitutional rights, or that the municipality officially sanctioned or ordered negligence in the hiring of Officer Speigle, or that whoever hired Officer Speigle was a municipal employee with final policy-making authority, *see Pembaur,* 475 U.S. at 482 ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered"), or that the hiring of Officer Speigle was in any other way related to or the product of municipal policy. *See Pembaur,* 475 U.S. at 480-83; *see also Scala*, 116 F.3d 1396 (11th Cir. 1997) (holding that a termination decision was not the result of municipal policy where the person making the termination decision was not a decision maker with final authority to establish municipal policy). Because Ford has not shown that the hiring of Officer Speigle was a "custom or policy" of the City, Ford has not the established existence of a municipal policy upon which to predicate Section 1983 liability. Therefore, the court grants the City's motion for summary judgment on Ford's claim for use of excessive force and dismisses that claim.

**IV. Conclusion**

Because the City is entitled to judgment as a matter of law that it is not liable under 42 U.S.C. § 1983 for Ford's claims for excessive force, the court does not need to reach the City's contention that the officers did not use excessive force. Further, the court has entered an order requiring the parties to submit additional briefs on whether evidence of an unconstitutional municipal "policy or procedure" regarding false arrest exists. *See Doc.* 31. Finally, the court reserves its ruling on the City's contention that it is entitled to summary judgment because Ford was not actually arrested or detained until after the court addresses the City's liability for false arrest under 42 U.S.C. § 1982.

A separate order will be entered contemporaneously with this opinion.

DONE and ORDERED this 31st day of January, 2005.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE