# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **EMANUEL FORD,** | ] |
| Plaintiff, | ] |
| v. | ] |
| | ] CV-03-BE-1956-S |
| **CITY OF BIRMINGHAM,** | ] |
| Defendant. | ] |

## MEMORANDUM OPINION

Before the court is Defendant City of Birmingham's Motion for Summary Judgment (Doc. 14). For the reasons stated herein, the court grants the motion. Accordingly, the court dismisses Ford's claim of false arrest. Because both of Ford's underlying causes of action are dismissed, the court does not need to address whether Ford has standing to seek injunctive relief in conjunction with those claims.

**I. Facts and Procedural Background**

The undisputed facts are as follows: Emmanuel Ford, a Birmingham Housing Authority employee, went into an apartment to inspect it. *Doc.* 15, Ex. 1, p. 22. Within minutes, police raided the unit on a warrant to seize cocaine and proceeds from crack cocaine distribution. *Doc.* 15, Ex. 1, p. 49; Ex. 2 p.1. During the drug raid, a policeman, now thought to be Officer Speigle, shoved Ford into a refrigerator, into a wall, into a table, and onto the floor. *Doc.* 15, Ex. 1, p. 54-57. Meanwhile, Ford was yelling that he worked for the Housing Authority and was inspecting the apartment. *Doc.* 15, Ex. 1, p. 57; *Doc.* 24, Ex.7, ¶ 11. The policeman handcuffed Ford and

left him on the floor for 15 to 20 minutes while the police conducted the drug raid and secured the apartment.  *Doc.* 15, Ex. 1, p. 59.  Then the police verified that Ford was a Housing Authority employee and released him.  *Doc.* 15, Ex. 1, p. 59-60.  Ford claims that he underwent medical treatment and missed work because his legs and one arm were injured[1] in the incident.  *Doc.* 15, Ex. 1, p. 73-79.  The police detained Ford in accordance with the City's policy that police should detain everyone in an apartment during execution of a search warrant.  *Doc*. 16, p. 10.

Ford sued the City under 42 U.S.C. § 1983 for false arrest and excessive use of force.  After the close of discovery, the City moved for summary judgment on both claims for relief.  After reviewing the parties' submissions, the court granted the City summary judgment on the excessive force claim and ordered further briefing regarding the claim for false arrest and Ford's standing to seek injunctive relief.  *See Docs*. 31-33.

**II.  Standard of review**

When a district court reviews a motion for summary judgment under Federal Rule of Civil Procedure 56, it must determine two things: (1) whether any genuine issues of material fact exist; and, if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c).  To succeed, the moving party bears the burden of establishing both prongs of the summary judgment test.  The nonmoving party may defeat the motion for summary judgment by establishing <u>either</u> genuine issues of material fact <u>or</u> that the movant is not entitled to judgment as a matter of law.

The moving party "always bears the initial responsibility of informing the district court of

---

[1] Based on the record on summary judgment, the exact nature and extent of Ford's injuries are unclear.

the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) (quoting Fed. R. Civ. P. 56). The party seeking summary judgment can meet this burden by offering evidence showing no dispute of material fact, or by showing that the nonmoving party's evidence fails to meet some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." 477 U.S. at 323.

When the moving party has met his burden, Rule 56 (e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P 56 (e)). The responding party does not need to present evidence in a form admissible at trial; "however, he may not merely rest on his pleadings." 477 U.S. at 324. "The plain language of Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In responding to a properly-supported motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). If the evidence is "merely colorable, or is not significantly

3

probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 , 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

After both parties have addressed the motion for summary judgment, the court must grant the motion <u>if</u> no genuine issues of material fact exist <u>and if</u> the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c).  In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which the jury could reasonably find for the nonmovant.  *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1998).  The court should not weigh the evidence, nor make determinations as to the credibility of witnesses because these decisions fall to the province of the jury.  *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000);  *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).   Thus, "the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.  "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Graham*, 193 F.3d at 1282 (quoting *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988)).

**III. Discussion**

In the first count of his complaint, Ford claims the City is liable to him under 42 U.S.C. § 1983 because the police officers violated his constitutional rights by arresting him without

probable cause.[2] *Complaint*, *Doc*. 1, at ¶ 11.  However, a municipality cannot be liable under Section 1983 unless the plaintiff shows that his constitutional rights were violated; that the municipality had a custom or policy that caused the constitutional violation; and that the custom or policy constituted deliberate indifference to the violation of the plaintiff's constitutional rights. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).  Because the City did not violate Ford's constitutional rights by arresting him without probable cause, the court grants the City's motion for summary judgment on Ford's claim of false arrest.

Ford's constitutional rights were not violated because "a warrant to search for contraband founded on probable cause implicitly carries with it the right to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705 (1981). Ford does not dispute that City police officers entered and searched the apartment on a warrant to search for contraband.  Ford also does not dispute the Jefferson County District Judge's finding of probable cause for issuing the warrant. *See Doc.* 15, Ex. 2, p.1.  Rather, Ford argues that he was arrested–not merely detained–during the search of the apartment, and that the arrest was unconstitutional because it was unsupported by probable cause.

No genuine issue of material fact exists regarding the character, scope, and length of the seizure of Emmanuel Ford.  Therefore, contrary to Ford's assertions, *see Doc*. 35, p.2, the legal character of the seizure is a question of law, not an issue of fact for the jury. *See*, *e.g.*, *United*

---

[2]Because Ford's first claim for relief is based solely on lack of probable cause, the court addresses only whether the seizure was supported by the level of suspicion required by the Constitution.  The court has already dismissed Ford's only other substantive claim for relief, which alleges that the police used unreasonable force.  *See Docs*. 32, 33.

*States v. Blackman*, 66 F.3d 1572, 1576-77 (11th Cir. 1995) (deciding as a matter of law that a seizure was an investigatory detention, not an arrest); *id*. at 1580 ("Whether an appellant's detention was an investigatory stop or a full-blown arrest is a question of law.") (Eisele, J., concurring in part and dissenting in part).

Ford maintains that he was arrested because, he argues, a seizure becomes a full-scale arrest when the person seized reasonably believes he is not free to leave. *See Doc*. 23, p. 10-11. However, "an investigatory stop is not an arrest despite the fact that a reasonable person would not believe he was free to leave." *Blackman*, 66 F.3d at 1576 (emphasis and citation omitted); *see also id.* ("[T]he fact that police handcuff the person or draw their weapons does not, as a matter of course, transform an investigatory stop into an arrest."); *United Stated v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989) ("[I]nvestigative detentions... involve[] reasonably brief encounters in which a reasonable person would... believe[] that he or she was not free to leave."). According to the Eleventh Circuit,

> No brightline test separates an investigatory stop from an arrest. Instead, whether a seizure has become too intrusive to be an investigatory stop and must be considered an arrest depends on the degree of intrusion, considering all the circumstances. We have concentrated on the public interest served by the seizure, the nature and scope of the intrusion, and the objective facts relied upon by the officers.

*Blackman,* 66 F.3d at 1576 (citations omitted); *see also Hastamorir*, 881 F.2d at 1556.

In general, the public interest in law enforcement justifies allowing the police to secure everyone present in an apartment while searching the apartment for contraband. By detaining those present in an apartment during a search for contraband, police prevent flight of suspects, minimize the risk of harm to officers and others present in the apartment, and facilitate the

orderly completion of the search. *See Michigan v. Summers*, 452 U.S. 692, 702-03 (1981).

Here, the nature and scope of the intrusion were limited to securing Ford until the police finished executing the warrant and verified that Ford was not a suspect. The police did not search Ford or even frisk him for weapons. During the fifteen to twenty minutes Ford lay handcuffed on the floor, the police were searching the apartment, and they released Ford immediately after securing the apartment and verifying that he was a housing inspector.

The specific, articulable facts in this case justify the seizure of Ford while the police searched the apartment for contraband. Ford argues that, because he did not fit the description of the suspect named in the warrant and because he told police he was a housing inspector, the police should have known he was an innocent bystander and left him alone. However, because a judicial officer determined that police had probable cause to believe that someone in the home was dealing drugs and that the apartment was connected to "drug trade," *see Doc*. 15, Ex. 2, p.1, Ford's presence in the apartment gave the police officers an easily identifiable and reasonable basis for suspecting that Ford was involved in criminal activity. *See Summers*, 452 U.S. at 703-04. Further, "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence." *Id*. at 703. Detaining Ford until the police could determine he was not a threat to their safety or the safety of others was reasonable.

Having considered "the public interest served by the seizure, the nature and scope of the intrusion, and the objective facts relied upon by the officers," as required by *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995), the court finds that the police detained Ford and did not arrest him. Therefore, the police did not violate his constitutional rights by arresting him

7

until they completed the search and verified his identity. *See Michigan v. Summers*, 452 U.S. 692, 705 (1981) ("A warrant to search for contraband founded on probable cause implicitly carries with it the right to detain the occupants of the premises while a proper search is conducted.").

**IV. Conclusion**

Because the City did not violate Ford's constitutional rights when it detained him, the City is entitled to judgment as a matter of law that it cannot be liable to Ford under 42 U.S.C. § 1983 on his claim for false arrest. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Therefore, the court grants the City's motion for summary judgment on Ford's claim for false arrest and dismisses that claim.

Ford admits that, under *City of Los Angelos v. Lyons*, 461 U.S. 95( 1981), he does not have standing to request injunctive relief from the City. *Doc.* 35, p.8. Both of Ford's claims against the City have now been dismissed. Therefore, court does not need to address whether Ford has standing to seek injunctive relief in conjunction with those claims. Because nothing is left for the court's adjudication, the court dismisses the action with prejudice.

A separate order will be entered contemporaneously with this opinion.

DONE and ORDERED this 23rd day of February, 2005.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE